UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL OSTAPA, | )<br>) Case No. 1:25-cv-1433 (FJS/TWD)<br>) |
| Plaintiff, | ) |
| - v - | ) **COMPLAINT** |
| TRANE U.S. INC. d/b/a TRANE TECHNOLOGIES, | )<br>) **JURY TRIAL DEMANDED**<br>) |
| Defendant. | ) |

For his COMPLAINT against Defendant TRANE U.S. INC. d/b/a TRANE TECHNOLOGIES, by and through his attorneys LIBERTY COUNSEL, Plaintiff PAUL OSTAPA alleges and avers as follows:

**INTRODUCTION**

1. Paul Ostapa emigrated to the United States from Ukraine in 2001. His family were devout Christians and fled their home country in pursuit of religious freedom, which they thought they would find here in the United States. Paul Ostapa did everything right to bring about his American dream – went to school, learned a trade, worked hard, and got a stable job with a reputable company by which he could make a good life for himself and his family. Paul gave glory to God for helping his family escape communism and the abundant blessings that followed. Paul never wavered in his devotion to his Christian faith. In 2022, something unexpected happened. Paul's life was turned upside down when his commitment to God and the teachings of his church were put on a collision course with events and new requirements at work. To avoid this conflict between his sincerely held religious beliefs and the employment requirements, Paul sought a reasonable accommodation from his employer, Trane Technologies. His request was granted by his immediate supervisor, but

Defendant did not honor the accommodation. As a result, Paul's long-term employment was terminated in violation of Title VII and the New York State Human Rights Law, and Paul was unjustly cast into a life of uncertainty and financial instability. Paul now seeks redress in this Court.

## PARTIES

2. Plaintiff PAUL OSTAPA (hereinafter "Paul" or "Plaintiff") was an employee of TRANE TECHONOGIES, INC. At all times relevant herein, Plaintiff was a resident of the County of Rensselaer, State of New York.

3. Defendant TRANE U.S. INC. ("Defendant") is a corporation incorporated in and registered pursuant to the laws of the State of New York. Defendant holds itself out to the public as "Trane Technologies" and responded to Plaintiff's Charge of Discrimination on letterhead bearing the name "Trane Technologies" but responding as Trane U.S. Inc., which its counsel described as "an affiliate of Trane Technologies." Defendant maintains offices throughout New York State, but the office Plaintiff worked out of is located in Latham, New York.

## JURISDICTION AND VENUE

4. This action arises under Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e, *et seq.*) and the New York State Human Rights Law, N.Y. Exec. Law §296(1).

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) because this action arises in the district in which all defendants reside and this is the district in which a substantial part of the events and omissions giving rise to the claim occurred.

7. This Court has the authority to grant the requested declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, implemented through Rule 57, Federal Rules of Civil

Procedure, and the requested injunctive relief under 28 U.S.C. § 2202 and Rule 65, Federal Rules of Civil Procedure.

8. The Court has authority to grant Plaintiff's request for damages and attorney's fees and costs under Title VII of the Civil Rights Act, 42 U.S.C. §2000e-5.

## GENERAL ALLEGATIONS

9. Paul was employed by Defendant for sixteen years as an HVAC technician and worked out of its Latham, New York location.

10. Paul earned an annual base salary of $94,000 and overtime pay of an additional approximate $11,000 annually.

11. In or around April 2022, Defendant hired a new technician. The technician was a female (referred to heretofore herein as "Jane Doe").

12. This was the first female technician hired by Defendant to work out of the same office as Paul during his period of employment.

13. Paul is a devout Christian. He attended Bible College in Ukraine before emigrating to the United States and is a member in good standing of the Southern Baptist Convention, a fundamentalist Christian denomination.

14. Paul's Christian faith and sincerely held religious beliefs dictate that he is not to be alone with a woman other than his wife. The origin of this religious doctrine is the biblical story of Joseph and Potiphar's wife found in *Genesis* 39, and specifically the passage that says to do such things is "a wicked thing and sin against God." *Genesis* 39:9 (NIV). Paul also has sincerely held religious beliefs that he is to abstain for even the appearance of evil. *I Thessalonians* 5:22 (KJV). Many well-known Christians adhere to this rule, such as former Vice President Mike Pence.

3

15. Because Paul is a strict adherent to this religious doctrine, he felt compelled to inform his employer that he could not be sent out on a service call alone with Jane Doe.

16. To that end, Paul began to compose an email to his manager, Mr. Audette, explaining his sincerely held religious beliefs, how those beliefs conflict with his employer's new requirements, and seeking a reasonable accommodation to avoid a conflict between those sincerely held religious beliefs and the requirements of his employment. Before Paul completed drafting the email, he had an in-person encounter with Mr. Audette in the office.

17. Paul was in the shop with a co-worker when Mr. Audette walked in. Paul approached Mr. Audette and told him that he heard a female technician had been hired, which Mr. Audette confirmed. Paul proceeded to request that he not be assigned to work alone with Jane Doe, and explained his sincerely held religious beliefs that he could not be alone with a woman other than his wife without violating his religious beliefs.

18. The co-worker overheard the conversation between Paul and his manager.

19. Mr. Audette laughed at first, telling Paul that he would not have to worry about being attracted to Jane Doe (Paul would later learn that Jane Doe is a lesbian). Paul quickly retorted that his sincerely held religious beliefs based on Scripture must be obeyed irrespective of the woman's looks or sexual preferences and that they were not contingent on the potential for sinful conduct As Scripture compels Paul to believe, his presence alone with a woman carries with it the appearance of evil from which he is to abstain. Paul further explained that the purpose of the teaching is to protect his reputation by insulating myself against false accusations. Ultimately, Mr. Audette agreed to the accommodation Paul requested.

20. Paul was one of sixteen technicians in his unit, and the location where he worked employed approximately 25-30 technicians, so assigning another technician to work with the new female technician in his place would not have caused Defendant undue hardship.

21. Paul worked at jobsites with Jane Doe without incident or objection when other technicians were present. His sole request was to be accommodated by not having to be alone with Jane Doe, and it was reasonable, practical, and not unduly burdensome to his employer.

22. On or around July 25, 2022, Jane Doe was sent to the job site where Paul was working. Because there was another employee present at the time of her arrival, Paul was not immediately alarmed. However, that employee had to leave prior to the completion of the job, which put Paul in a very uncomfortable position.

23. Paul was conflicted about how to handle the situation, not wanting to let down his employer or violate the dictates of his faith, so he opted to just finish the job as quickly as possible and leave.

24. That encounter caused Paul great inner conflict and emotional turmoil, but after prayer and reflection he decided that it was a one-time mistake by an ill-informed dispatcher and let it go.

25. Then, on or around October 5, 2022, Paul was working alone on a job site when he was contacted by the dispatcher and informed that Jane Doe would be joining Paul at the job site the following day.

26. Paul politely informed the dispatcher of the religious accommodation his supervisor had granted him, which required that his employer not assign to work alone with a female technician.

27. The dispatcher did not end up sending Jane Doe to Paul's job site. However, the dispatcher reported Paul's objection to Defendant's Human Resources ("HR") department.

28. On October 13, 2022, Paul was called into a meeting. Present at the meeting was Mr. Audette (whose official title is area service manager), the district service manager, and the district office manager. An HR representative was present on the phone.

29. Defendant's human resources representative told Paul he was being placed on administrative leave.

30. Paul was not provided with a reason for the forced leave, so he asked the human resources representative why he was being placed on leave.

31. The human resources representative responded that the reason could not be disclosed.

32. Paul left the office that day as directed.

33. The following day, the HR representative called Paul at home and asked him a series of questions, including if he had ever refused to work with a fellow Trane employee.

34. In response, Paul did his best to inform Defendant's HR representative that he had informed a dispatcher on one occasion of his religious accommodation that allowed him to not be assigned to work alone with a female. However, because the questions asked called only for "yes" or "no" responses and the HR representative cut Paul off whenever he tried to offer a more detailed response, Paul was limited in the explanation he could offer.

35. On October 24, 2022, Paul received another telephone call from the HR representative and the district office manager informing Paul that his employment with Trane Technologies was officially terminated. The basis given for the termination was "insubordination" for refusal to work with another employee. Paul asked why the religious accommodation he had been granted was not being honored or taken into account and the HR representative responded that they had no official record of any such request because it did not go through the proper channels. The HR

representative refused to engage in further dialogue with Paul regarding his sincerely held religious beliefs and/or need for reasonable accommodation.

36. Paul filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discriminatory treatment on the basis of religion.

37. In its submission to the EEOC, Defendant denies having granted a religious accommodation to Paul and proffered a different, clearly pretextual basis for his termination.

38. Without doing any independent investigation but relying solely upon the self-serving representations of Defendant's counsel, the EEOC issued a right-to-sue letter on July 15, 2025, which is attached hereto as EXHIBIT A and incorporated as if fully set forth herein.

## CLAIMS

### COUNT I—VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, *et seq.*
### (FAILURE TO ACCOMMODATE)

39. Plaintiff hereby realleges and adopts each and every allegation in paragraphs 1–38 above as if fully set forth herein.

40. Title VII prohibits discrimination against employees on the basis of their religion. 42 U.S.C. §2000e-2(a) ("It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin . . .").

41. Title VII defines the protected category of religion to include "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

42. Defendant is an employer within the meaning of Title VII and employs more than 15 employees.

43. Title VII requires employers to reasonably accommodate the religious beliefs and practices of their employees unless the employer is able to demonstrate that doing so would cause said employer to suffer undue hardship. *See, e.g.*, *Groff v. DeJoy*, 600 U.S. 447, 457 (2023).

44. This obligation may not be avoided by the employer "even if he has no more than an unsubstantiated suspicion that accommodation would be needed." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773 (2015). In other words, Defendant does not even need actual knowledge of the need for an accommodation of an employee's sincerely held religious beliefs if a mere suspicion puts the employer on notice of such a need.

45. Defendant had actual knowledge and notice of Paul's sincerely held religious beliefs that necessitated accommodation. Defendant was provided actual knowledge of Paul's sincerely held religious beliefs and need for accommodation when Paul informed his area manager of his beliefs, requested and was granted a specific accommodation. Defendant received further knowledge or confirmation of Paul's need for an accommodation through Paul's conversation with the dispatcher, which was conveyed to HR, and then again through Paul's subsequent conversation with Defendant's HR representative. Defendant again obtained knowledge of Paul's sincerely held religious beliefs necessitating accommodation and of Paul's reliance upon what he believed to be a previously granted accommodation through Paul's final conversation with HR referenced in paragraph 35 above.

46. By refusing to engage in the legally required interactive accommodation process, grant a religious accommodation for Paul's sincerely held religious beliefs, honor the religious accommodation previously granted to him, and ultimately terminating Paul for adhering to his sincerely held religious beliefs, Defendant discriminated against Paul on the basis of religion with respect to the terms, conditions, and privileges of employment.

47. Paul was otherwise qualified for his employment with the Defendant, as evidenced by his sixteen year tenure of unblemished employment with the company.

48. Defendant had an unquestionable obligation to engage in an interactive accommodation process with Paul concerning his sincerely held religious beliefs, the conflict between the religious beliefs and Defendant's employment requirements, and to attempt to reach an accommodation suitable for Paul and consistent with the requirements of Title VII.

49. Defendant failed to engage in the required interactive process with Paul or make any effort to arrive at a mutually agreeable accommodation. In fact, Defendant's HR representative expressly refused to engage in any dialogue concerning Paul's need for a religious accommodation.

50. Defendant's termination of Paul's employment is the direct result of Plaintiff's exercise of his sincerely held religious beliefs and expression.

51. Defendant's violation of Title VII has caused actual and undue hardship and damages to Paul's sincerely held religious beliefs.

52. Defendant's adverse employment actions against Paul, including the denial of accommodation and termination of employment, have caused, are causing, and will continue to cause damage and harm to Paul, including loss of income, professional opportunities, and reputational harm.

WHEREFORE, Plaintiff respectfully prays for relief against Defendant as hereinafter set forth in his prayer for relief.

**COUNT II—VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, *et seq.*
(RETALIATION)**

53. Plaintiff hereby realleges and adopts each and every allegation in paragraphs 1–30 and 40-52 above as if fully set forth herein.

54. Paul has sincerely held religious beliefs, as outlined *supra* and incorporated herein, that conflicted with Defendants' policies and other employment requirements.

55. Paul made Defendant aware of his sincerely held religious beliefs and the conflict between his sincerely held religious beliefs and a particular condition or potential condition of his employment with Defendant.

56. Paul sought a reasonable accommodation from Defendant to resolve the conflict between his sincerely held religious beliefs and Defendant's conflicting employment requirements.

57. In retaliation for Paul exercising his right afforded by Title VII to seek reasonable accommodation in light of the conflict between his sincerely held religious beliefs and the requirements of his employment, Defendant subjected Paul to adverse employment actions and a hostile work environment, including interrogation and harassment, forced abrupt administrative leave, and termination of his employment.

58. Paul suffered materially adverse employment action as a result of his sincerely held religious beliefs and accommodation requests.

59. There is a direct and causal connection between Paul's sincerely held religious beliefs, his request for those religious beliefs to be accommodated, and Defendant's adverse employment actions against Paul.

60. Defendant can articulate no legitimate or rational, non-discriminatory reason for the adverse employment actions undertaken against Paul.

61. Any rationale Defendant could articulate for the retaliatory and adverse employment actions against Paul would, plainly, be pretextual.

62. Defendant's retaliatory and adverse employment actions against Paul for the exercise of his sincerely held religious beliefs and requests for accommodation would not have occurred in the absence of retaliatory motive.

63. Defendant's violation of Title VII has caused actual and undue hardship and damages to Paul's sincerely held religious beliefs.

64. Defendant's adverse employment actions against Paul, including the denial of accommodation and termination of employment, have caused, are causing, and will continue to cause damage and harm to Paul, including loss of income, professional opportunities, and reputational harm.

WHEREFORE, Plaintiff respectfully prays for relief against Defendant as hereinafter set forth in his prayer for relief.

### COUNT III—VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW
### N.Y. Exec. Law §296(1)

65. Plaintiff hereby realleges and adopts each and every allegation in paragraphs 1–30, 40-51, and 54-64 above as if fully set forth herein.

66. The actions undertaken by Defendant against Paul as alleged herein violate the New York State Human Rights Law ("NYSHRL").

67. The standards of proof and review for violations the NYSHRL mirror Title VII. *See, e.g.*, *Mandell v. County of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003).

68. The actions of Defendant alleged herein caused Paul to suffer financial, emotional, and reputational harm.

WHEREFORE, Plaintiff respectfully prays for relief against Defendant as hereinafter set forth in his prayer for relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

A. That the Court render a declaratory judgment declaring that Defendant's termination of Plaintiff's employment was unlawful, and further declaring—

(1) that Defendant intentionally discriminated against Plaintiff's sincerely held religious beliefs and expression by terminating him on the basis of his request for accommodation;

(2) that Defendant intentionally and unlawfully discriminated against Plaintiff in violation of Title VII by refusing to engage in the interactive accommodation process;

(3) that Defendant intentionally and unlawfully discriminated against Plaintiff in violation of Title VII by retaliating against Plaintiff for requesting accommodation on the basis of his sincerely held religious beliefs; and

(4) that Defendant intentionally and unlawfully terminated Plaintiff in violation of the New York State Human Rights Law by discriminating against Plaintiff on the basis of his sincerely held religious beliefs.

B. That the Court adjudge, decree, and declare the rights and other legal obligations and relations within the subject matter here in controversy so that such declaration shall have the full force and effect of final judgment;

C. That the Court restore Plaintiff to the *status quo ante* – that is, reinstate Plaintiff to his prior position of employment and restore all benefits appurtenant thereto;

D. That the Court award Plaintiff backpay and other actual damages in an amount to be determined at trial;

E. That the Court award Plaintiff reasonable attorney's fees, costs, and other expenses and disbursements in this action;

F. That the Court retain jurisdiction over the matter for the purposes of enforcing the Court's order; and

G. That the Court grant such other and further relief as the Court deems equitable and just under the circumstances.

Dated: October 14, 2025

          Respectfully Submitted,

          LIBERTY COUNSEL

By:       /S/
Kristina S. Heuser, Esq.
Mathew D. Staver, Esq.*
Horatio G. Mihet, Esq.*
Daniel G. Schmid, Esq.*
*Attorneys for Plaintiff*
P.O. Box 540774
Orlando, FL 32854
Phone: (407) 875-1776
Facsimile: (407) 875-0770
Emails: kheuser@lc.org
       hmihet@lc.org
       dschmid@lc.org
       court@lc.org
*Seeking admission *pro hac vice*