**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------X

PAUL OSTAPA,

                                    Plaintiff,

                -against-

TRANE U.S. INC d/b/a TRANE
TECHNOLOGIES,

                                    Defendant.

-------------------------------------------------------X

Case No.: 1:25-CV-1433 (FJS/TWD)


**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
DISMISS PLAINTIFF'S COMPLAINT**


Kristi Rich Winters, Esq.
Benjamin Wilkinson, Esq.
JACKSON LEWIS P.C.
677 Broadway, 9th Floor
Albany, NY 12207

*ATTORNEYS FOR DEFENDANT*


Dated: December 15, 2025
        Albany, New York

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT**                                                    1

**FACTUAL BACKGROUND**                                                       2

**LEGAL STANDARD**                                                           5

**ARGUMENT**                                                                 6

    I.      PLAINTIFF'S TITLE VII AND NYSHRL ACCOMODATION CLAIMS MUST BE DISMISSED BECAUSE GRANTING THE PROPOSED ACCOMMODATION WOULD HAVE IMPOSED AN UNDUE HARDSHIP ON TRANE AS A MATTER OF LAW                            6

          A.    An accommodation imposes an undue hardship if it would require an employer to violate the law or if it increases the employer's risk of legal liability                    7

          B.    Trane could not accommodate Plaintiff's religious belief without violating then-existing federal regulations and exposing itself to liability under the NYSHRL and Title VII                    8

             1.    Accommodating Plaintiff would have violated Executive Order 11246 and its implementing regulations, which were binding on Trane at the time period relevant to this Complaint...................................................................... 8

             2.    Accommodating Plaintiff would have exposed Trane to potential claims of discrimination under the NYSHRL................ 10

             3.    Accommodating Plaintiff would have violated Title VII's prohibition on segregated workplaces and exposed Trane to claims of a hostile work environment ......................................... 13

    II.     PLAINTIFF'S NYSHRL RELIGIOUS DISCRIMINATION CLAIM MUST BE DISMISSED FOR THE SAME REASONS AS HIS TITLE VII CLAIM                            17

    III.    PLAINTIFF'S RETALIATION CLAIMS FAIL AS A MATTER OF LAW AND MUST BE DISMISSED                            18

          A.    Requesting an accommodation is not protected activity under the NYSHRL, and thus cannot support a claim of retaliation                            18

B.    Plaintiff has not alleged protected activity for purposes of his retaliation claim under Title VII, and even if he did, the claim is wholly duplicative of his failure to accommodate claim and must be dismissed                                           18

    1.    Plaintiff does not allege that he opposed unlawful conduct ........................................................................................ 19

    2.    The only alleged adverse action is the denial of his religious accommodation, which is insufficient as a matter of law ............. 19

**CONCLUSION**                                                                                          20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Addonizio v. Nuvance Health*,
    No. 23-CV-1582, 2024 U.S. Dist. LEXIS 103874 (S.D.N.Y. June 11, 2024) .......................20

*Albunio v. City of New York*,
    16 N.Y.3d 472 (2011) ...............................................................................................12

*Alvarez v. New York City Tr. Auth.*,
    230 A.D.3d 541 (2d Dep't 2024) ..............................................................................11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................................5

*Banasik v. Mount Sinai Health Sys.*,
    No. 153072/2023, 2025 N.Y. Misc. LEXIS 2236 (Sup. Ct., N.Y. Cty. Apr. 11,
    2025) ...................................................................................................................17, 18

*Bey v. City of New York*,
    999 F.3d 157 (2d Cir. 2021)....................................................................................7, 10

*Brown v. Alaska Airlines, Inc.*,
    No. 22-CV-668, 2024 U.S. Dist. LEXIS 92026 (W.D. Wash. May 22, 2024).......................16

*Bushra v. Main Line Health*,
    709 F.Supp.3d 164 (E.D. Pa. 2023) ..........................................................................19

*Cassano v. Carb*,
    436 F.3d 74 (2d Cir. 2006) (per curiam)......................................................................7

*Chaney v. Plainfield Healthcare Ctr.*,
    612 F.3d 908 (7th Cir. 2010) ...................................................................................16

*D'Cunha v. Northwell Health Sys.*,
    No. 23-476, 2023 U.S. App. LEXIS 30612 (2d Cir. Nov. 17, 2023) ...................................6, 7

*Does 1-2 v. Hochul*,
    No. 22-2858, 2024 U.S. App. LEXIS 32305 (2d Cir. Dec. 20, 2024).......................7

*EEOC v. Abercrombie & Fitch Stores, Inc.*,
    575 U.S. 768 (2015)...................................................................................................6

*EEOC v. Autozone, Inc.*,
  860 F.3d 564 (7th Cir. 2017) ...................................................................13

*EEOC v. N. Men. Health Care*,
  908 F.3d 1098 (8th Cir. 2018) .................................................................19

*Evans v. Sheraton Park Hotel*,
  503 F.2d 177 (1974)...................................................................................13

*Ferrill v. Parker Group, Inc.*,
  168 F.3d 468 (11th Cir. 1999) .................................................................14

*Firefighters Institute for Racial Equality v. City of Saint Louis*,
  549 F.2d 506 (8th Cir. 1977) ...................................................................15

*French v. Albany Med. Ctr.*,
  No. 22-CV-252, 2024 U.S. Dist. LEXIS 104192 (N.D.N.Y. June 12, 2024)..........................8

*Golston-Green v. City of New York*,
  184 A.D.3d 24 (2d Dep't 2020) .........................................................11, 12

*Groff v. DeJoy*,
  600 U.S. 447 (2023).............................................................................6, 7

*Hughes-Greene v. Westchester Med. Ctr.*,
  No. 63095/2023, 2024 N.Y. Misc. LEXIS 2176 (Sup. Ct., Westchester Cty.
  May 10, 2024)............................................................................................17

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*,
  146 F.3d 66 (2d Cir. 1998)..........................................................................5

*Kellman v. Metro Transp. Auth.*,
  8 F.Supp.3d 351 (S.D.N.Y. 2014) ............................................................12

*Knight v. Conn. Dep't of Pub. Health*,
  275 F.3d 156 (2d Cir. 2001).......................................................................13

*Knight v. Nassau County Civil Service Com.*,
  649 F.2d 157 (2d Cir. 1981).................................................................13, 14

*Matthews v. Wal-Mart Stores, Inc.*,
  417 Fed. Appx. 552 (7th Cir. 2011)......................................................8, 16

*McCabe v. 511 W. 232nd Owners Corp.*,
  237 N.Y.S.3d 118 (2024)............................................................................10

*Melman v. Montefiore Med. Ctr.*,
  98 A.D.3d 107 (1st Dep't 2012) ................................................................12

*Montague v. Nat'l Grid USA*,
 No. 17-CV-0003S, 2020 U.S. Dist. LEXIS 217798 (W.D.N.Y. Nov. 20, 2020) ...................20

*Nevius v. Far. Inland Mission Int'l*,
 511 F.Supp.2d 114 (D.D.C. 2007) ...........................................................................................3

*Otero v. District Council 37, AFSCME, AFL-CIO*,
 No. 161421/2013, 2019 N.Y. Misc. LEXIS 4281 (Sup. Ct., N.Y. Cty. July 30,
 2019) ....................................................................................................................................12

*Papasan v. Allain*,
 478 U.S. 265 (1986) ..............................................................................................................5

*Patterson v. UPMC South Hills Health Sys. Home Health, L.P.*,
 No. 03-89, 2005 U.S. Dist. LEXIS 47610 (W.D. Penn. May 15, 2005)................................14

*Peterson v. Helwett-Packard Co.*,
 358 F.3d 599 (9th Cir. 2004) ...............................................................................................16

*Potter v. City of New York*,
 No. 155953/2022, 2024 N.Y. Misc. LEXIS 6990 (Sup. Ct., N.Y. Cty. Sept.
 11, 2024) ...............................................................................................................................11

*Ret. Sys. v. MF Glob., Ltd.*,
 620 F.3d 137 (2d Cir. 2010)...................................................................................................6

*Robles v. Medisys Health Network, Inc.*,
 No. 19-CV-6651, 2020 U.S. Dist. LEXIS 109115 (E.D.N.Y. June 19, 2020) ......................20

*Russo v. Patchogue-Medford Sch. Dist.*,
 129 F.4th 182 (2d Cir. 2025) .............................................................................................6, 7

*Salamoon v. Richmond Univ. Med. Ctr.*,
 No. 151073/2023, 2024 N.Y. Misc. LEXIS 6190 (Sup. Ct., Richmond Cty.
 Apr. 11, 2024) .......................................................................................................................17

*Stanley v. ExpressJet Airlines, Inc.*,
 808 Fed. Appx. 351 (6th Cir. 2020).......................................................................................19

*Syeed v. Bloomberg L.P.*,
 41 N.Y.3d 446 (2024) ............................................................................................................10

*Taulbee v. D'Youville College*,
 No. 21-CV-228, 2022 U.S. Dist. LEXIS 25037 (W.D.N.Y. Jan. 11, 2022)...........................18

*Tellabs v. Makor Issues & Rights, Ltd.*,
 551 U.S. 308 (2007)...............................................................................................................5

*Vega v. Hempstead Union Free Sch. Dist.*,
    801 F.3d 72 (2d Cir. 2015) .................................................................................18

*Walrond v. New York City Health & Hosps. Corp.*,
    240 A.D.3d 933 (2d Dep't 2025) ........................................................................17

*Wright v. White Plains Hosp. Med. Ctr.*,
    237 A.D.3d 1143 (2d Dep't 2025) .......................................................................11

**Statutes**

42 U.S.C. § 2000e-2(a)(1) .....................................................................................13

42 U.S.C. § 2000e-2(a)(2) ................................................................................12, 13

N.Y. Exec. Law §§ 296(1)(a), (h) .........................................................................10

N.Y. Exec. Law § 296(10)(d) ...............................................................................17

**Rules**

41 C.F.R. §§ 60-1.1, 1.27-28 ................................................................................10

41 C.F.R. §§ 60-1.3, 60-1.5 ....................................................................................9

41 C.F.R. § 60-1.4(a)(1) ......................................................................................9, 10

41 C.F.R. § 60-20.3 ................................................................................................9

Federal Rules of Civil Procedure 12(b)(6) ................................................... *passim*

Defendant Trane U.S. Inc. d/b/a Trane Technologies ("Trane"), by and through its undersigned attorneys, hereby moves to dismiss the Complaint filed by Paul Ostapa ("Plaintiff") on October 14, 2025 (the "Complaint") pursuant to the Federal Rules of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff claims that his sincerely held religious beliefs prohibit him from being alone with a woman who is not his wife.  His belief originates in the biblical story of Joseph and Potiphar's wife—Potiphar's wife attempted to seduce Joseph while the two were alone, and after Joseph rejected her advances, she falsely accused him of sexual assault.  To avoid Joseph's fate and protect his "reputation" from "false accusations" of sexual impropriety, Plaintiff refuses to be alone with any woman (other than his wife), including while at work.

Plaintiff claims that Trane, his prior employer, had to accommodate his refusal to work alone with women, and that by not doing so, it violated Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York State Human Rights Law ("NYSHRL").  Plaintiff is incorrect.  An employer is not required to accommodate an employee's religious belief if doing so would impose an undue hardship.  As relevant here, an accommodation imposes an undue hardship if it would require an employer to violate the law or binding regulations, or cause it to discriminate against its employees.  Assuming his allegations are true, accommodating Plaintiff would have required that Trane assign technicians to jobsites and service calls based on their sex, in clear violation of Executive Order 11246 and its implementing regulations, the NYSHRL, and Title VII itself.[1]  That is an undue hardship as a matter of law, and requires dismissal of Plaintiff's discrimination claims.

---

[1] As noted below, *infra* at n.6, Executive Order 11246 was rescinded on January 21, 2025, well after Plaintiff's employment with Trane ended. *See* Executive Order 14173; Dkt. 1, ¶ 35. Its requirements applied to Trane at all times relevant here.

His retaliation claims are similarly flawed.  Plaintiff alleges that he was retaliated against for requesting a religious accommodation, but requesting an accommodation is not, on its own, protected activity under the NYSHRL or Title VII.  Even if it was, Plaintiff claims that Trane retaliated against him for requesting an accommodation by denying his accommodation request.  He has not alleged any independent adverse act.  Courts have repeatedly held that an alleged failure to accommodate cannot be "bootstrapped" into a retaliation claim, which is precisely what Plaintiff attempts to do here.  It is not actionable, and must be dismissed.

For these reasons, and the reasons set forth more fully below, Trane respectfully requests that Plaintiff's Complaint be dismissed, with prejudice, and without leave to amend.

## FACTUAL BACKGROUND[2]

Plaintiff was employed by Trane as a technician in its Latham, New York location.  Dkt. 1, ¶ 9.  Approximately 25-30 technicians worked from the Latham office, 16 of whom were assigned to Plaintiff's "unit."  *Id*., ¶ 20.  In or around April 2022, Trane hired "Jane Doe," the "first female technician hired by [Trane] to work out of the same office as [Plaintiff] during his period of employment."  *Id*. ¶¶ 11-12.

Plaintiff claims that he is a "devout Christian," whose "Christian faith and sincerely held religious beliefs dictate that he is not to be alone with a woman other than his wife."  *Id*. ¶¶ 13-14.  This belief is based on "the biblical story of Joseph and Potiphar's wife," which provides as follows:

> So Potiphar left everything he had in Joseph's care; with Joseph in charge, he did not concern himself with anything except the food he ate.  Now Joseph was well-built and handsome, and after a while his master's wife took notice of Joseph and said, "Come to bed with

---

[2] As Defendant brings this motion under Federal Rule of Civil Procedure 12(b)(6), the operative facts set forth herein are taken from Plaintiff's Complaint and – for the purposes of this Motion only – presumed to be true.  A true and correct copy of the Complaint is annexed to the accompanying Declaration of Kristi Rich Winters, dated December 15, 2025, as Exhibit A.

me!" But he refused. "With me in charge," he told her, "my master does not concern himself with anything in the house; everything he owns he has entrusted to my care. No one is greater in this house than I am. My master has withheld nothing from me except you, because you are his wife. How then could I do such a wicked thing and sin against God?" And though she spoke to Joseph day after day, he refused to go to bed with her or even be with her. One day he went into the house to attend to his duties, and none of the household servants was inside. She caught him by his cloak and said, "Come to bed with me!" But he left his cloak in her hand and ran out of the house.

When she saw that he had left his cloak in her hand and had run out of the house, she called her household servants. "Look," she said to them, "this Hebrew has been brought to us to make sport of us! He came in here to sleep with me, but I screamed. When he heard me scream for help, he left his cloak beside me and ran out of the house." She kept his cloak beside her until his master came home. Then she told him this story: "That Hebrew slave you brought us came to me to make sport of me. But as soon as I screamed for help, he left his cloak beside me and ran out of the house."

When his master heard the story his wife told him, saying, "This is how your slave treated me," he burned with anger. Joseph's master took him and put him in prison, the place where the king's prisoners were confined.

Gensis 39:6-20 (NIV).[3]   Plaintiff also believes that he must "abstain [from] even the appearance of evil." Dkt. 1, ¶ 14 (citing I Thessalonians 5:22 (KJV)).

Plaintiff was assigned to work at jobsites. Dkt. 1, ¶¶ 20-21, 25. Depending on the assignment he would work independently, or with one or more of his coworkers. *Id.* At some point, Plaintiff spoke to his manager and requested that he "not be assigned to work alone with Jane Doe, and explained his sincerely held religious beliefs that he could not be alone with a woman other than his wife". Dkt. 1, ¶ 17. Plaintiff went on to explain, to both his manager and a

---

[3] The Court respectfully requests the Court take judicial notice of this Bible excerpt, a copy of which is attached to the Declaration of Kristi Rich-Winters as Exhibit B. *See Nevius v. Far. Inland Mission Int'l*, 511 F.Supp.2d 114, 119 (D.D.C. 2007) (taking judicial notice of passage in the Bible).

coworker who was present for the conversation, that "[Plaintiff's] presence alone with a woman carries with it the appearance of evil from which he is to abstain" and that "the purpose of the teaching is to protect his reputation by insulating [himself] against false accusations." *Id.* ¶ 19. Plaintiff's manager "agreed to the accommodation [Plaintiff] requested."

On or around July 25, 2022, a dispatcher assigned Ms. Doe to a job site where Plaintiff was working. Plaintiff "decided that it was a one-time mistake by an ill-informed dispatcher and let it go." On October 5, 2022, a dispatcher notified Plaintiff that Ms. Doe would be assigned to work with him at a job site the following day. *Id.* ¶ 25. Plaintiff informed the dispatcher that he could not work alone with a female technician. *Id.* ¶ 26. The dispatcher did not send Ms. Doe to the job site, and reported Plaintiff's comments to the Company's Human Resources ("HR") department. *Id.* ¶ 27.

Trane placed Plaintiff on administrative leave on October 13, 2022. *Id.* ¶¶ 28-29. He was subsequently contacted by an "HR representative" and asked whether he had refused to work with "a fellow Trane employee." *Id.* ¶ 33. Plaintiff attempted to inform the HR representative that he had "informed a dispatcher on one occasion of his religious accommodation that allowed him to not be assigned to work alone with a female." On October 24, 2022, Trane terminated Plaintiff's employment, "for refusal to work with another employee." *Id.* ¶ 35.

This lawsuit followed. Plaintiff claims that Trane discriminated against him because of his "sincerely held religious beliefs," and retaliated against him for requesting a religious accommodation, in violation of Title VII and the NYSHRL. *Id.* ¶¶ 39-52, 53-64. 65-68. As set forth below, those claims fail as a matter of law.

## **LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead sufficient facts "'to state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Moreover, while the Court "must take all of the factual allegations in the complaint as true" for the purposes of a motion to dismiss, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

"Determining whether a complaint states a plausible claim for relief " is "a context-specific task" that requires a court "to draw on its judicial experience and common sense." *Id.* The Court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated in the complaint by reference, and matters of which a court may take judicial notice." *Tellabs v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, at 322 (2007). Judicial notice may be taken of matters "not subject to reasonable dispute" that are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) (quoting Fed. R. Evid. 201(b)).

Here, even taking the allegations as true and affording them every favorable inference, Plaintiff has not stated a plausible claim for discrimination or retaliation. His claims must be dismissed.

## **ARGUMENT**

I.  **PLAINTIFF'S TITLE VII AND NYSHRL ACCOMODATION CLAIMS MUST BE DISMISSED BECAUSE GRANTING THE PROPOSED ACCOMMODATION WOULD HAVE IMPOSED AN UNDUE HARDSHIP ON TRANE AS A MATTER OF LAW**

To adequately plead a claim for religious discrimination under Title VII, a plaintiff must plausibly allege that "'(1) he held a bona fide religious belief conflicting with an employment requirement; (2) he informed his employer of this belief; and (3) he was disciplined for his failure to comply with the conflicting employment requirement.'" *D'Cunha v. Northwell Health Sys.*, No. 23-476, 2023 U.S. App. LEXIS 30612, at *6 (2d Cir. Nov. 17, 2023) (cleaned up) (quoting *Knight v. Conn. Dep't of Pub. Health*, 275 F.3d 156, 157 (2d Cir. 2001) (citation omitted)).

An employer does not violate Title VII, however, if it can show that accommodating the plaintiff's religious belief would have caused it to suffer an undue hardship. *Russo v. Patchogue-Medford Sch. Dist.*, 129 F.4th 182, 186 (2d Cir. 2025) (citation omitted); *see also D'Cunha*, 2023 U.S. App. LEXIS 30612, at *6.[4] As the Supreme Court recently clarified, an undue hardship is "shown when a burden is substantial in the overall context of an employer's business." *Groff v. DeJoy*, 600 U.S. 447, 468 (2023). While it is an affirmative defense, undue hardship "may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) … if the defense appears on the face

---

[4] Plaintiff purports to bring a "failure to accommodate" claim under Title VII. There is no standalone "failure to accommodate" claim under Title VII. There is only a disparate treatment claim, the defense to which is that the plaintiff's religious belief could not be accommodated. *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 772, n.2 (2015) ("If he is willing to accommodate—which means nothing more than allowing the plaintiff to engage in her religious practice despite the employer's normal rules to the contrary—adverse action "because of" the religious practice is not shown.").

of the complaint." *Iowa Pub. Emps.' Ret. Sys. v. MF Glob., Ltd.*, 620 F.3d 137, 145 (2d Cir. 2010) (internal quotation marks and citations omitted).

It does here. As set forth below, an accommodation imposes an undue hardship if it would require an employer to violate the law or binding regulations. Plaintiff's request to not work alone with a woman would have violated federal regulations, the NYSHRL, and Title VII itself. Because the Complaint establishes the existence of an undue hardship, Plaintiff's claim must be dismissed.

A. **An accommodation imposes an undue hardship if it would require an employer to violate the law or if it increases the employer's risk of legal liability**

"Under [Second Circuit] precedent, an accommodation that would require an employer to violate the law imposes an undue hardship." *Russo*, 129 F.4th 182 at 186 (citing *Bey v. City of New York*, 999 F.3d 157, 170 (2d Cir. 2021); *Cassano v. Carb*, 436 F.3d 74, 75 (2d Cir. 2006) (per curiam)). The Second Circuit has confirmed this repeatedly and unequivocally, including after *Groff*. *See Russo*, 129 F.4th at 186; *Does 1-2 v. Hochul*, No. 22-2858, 2024 U.S. App. LEXIS 32305 (2d Cir. Dec. 20, 2024) (affirming dismissal of Title VII claim where granting religious accommodation would have required defendants to violate state regulations); *D'Cunha*, 2023 U.S. App. LEXIS 30612, at *6 (affirming dismissal of religious discrimination claim on a Rule 12(b)(6) motion because the employer "could not have granted plaintiff's religious-exemption request without violating the State Mandate" requiring COVID-19 vaccination, thereby posing an undue hardship).

This is true regardless of whether the accommodation would violate federal regulations (*Bey*), federal statute (*Cassano*), or state law (*Russo, Does 1-2, D'Cunha*). Being forced to violate *any* law or binding regulation is an "excessive" and "unjustifiable" burden, and an accommodation

compelling such a result is an undue hardship.  *D'Cunha*, 2023 U.S. App. LEXIS 30612, at *6.

Similarly, an undue hardship can exist if the necessary accommodations would "increase … the

risk of legal liability for the employer," even if risk is not certain.  *French v. Albany Med. Ctr.*,

No. 22-CV-252, 2024 U.S. Dist. LEXIS 104192, at *31 (N.D.N.Y. June 12, 2024) (internal

quotation and citation omitted) (collecting cases); *Matthews v. Wal-Mart Stores, Inc.*, 417 Fed.

Appx. 552, 554 (7th Cir. 2011) (religious accommodation was an undue hardship where it could

place the employer on "razor's edge" of liability by exposing it to claims of permitting workplace

harassment).

**B.    Trane could not accommodate Plaintiff's religious belief without violating then-existing federal regulations and exposing itself to liability under the NYSHRL and Title VII**

Plaintiff worked with other technicians, including on a one-to-one basis.  Dkt. 1, ¶¶ 21, 24.

To accommodate Plaintiff's religious belief and inability to be alone with women, Trane would

have had to assign technicians to jobsites based on their sex.  Women could not be assigned to

service calls or jobsites where they might be alone with Plaintiff.  Dkt. 1, ¶ 20.  Those assignments

could only be given to men.  This sex-based assignment system would have violated then-existing

federal regulations and exposed Trane to claims of unlawful sex discrimination under the

NYSHRL and Title VII.  As this risk of legal liability would create an undue hardship as a matter

of law, Plaintiff's religious discrimination claim must be dismissed.

1.    Accommodating Plaintiff would have violated Executive Order 11246 and its implementing regulations, which were binding on Trane at the time period relevant to this Complaint

At all times relevant to this Complaint, Trane was a federal contractor subject to Executive

Order 11246 and its implementing regulations.[5]  Those regulations required that Trane "take

---

[5] That Trane was a federal contractor is a matter of public record.  The prime contracts awarded to Trane are summarized on  https://www.usaspending.gov/search/?hash=3d7de910009df9604792dafffb7c8510  (last accessed

affirmative action to ensure" employees were treated "without regard" to their sex," 41 C.F.R. §

60-1.4(a)(1), and set forth "specific requirements" for Trane to "meet in fulfilling [its] obligations"

under the Executive Order.  *Id.* § 60-20.1.[6]   As relevant here, Trane was prohibited from: (1)

"mak[ing] any distinction based on sex" in "job assignments" or other "terms, conditions, or

privileges of employment"; (2) "making any facilities and employment-related activities available

only to members of one sex"; and (3) "distinguishing on the basis of sex" in employment

"opportunities," including on-the-job training, networking, mentoring, and rotational assignments.

*Id.* § 60-20.2(b).[7]  In addition, Trane had to ensure that its "facilities," which included all work

areas, were "provided in such a manner that segregation on the basis of sex … [could] not result."

*Id.* § 60-1.8.  Trane could not require "nor tolerate" segregated facilities, and could not "assign[

employees] to perform their services at any location, under [Trane's] control, where the facilities

[were] segregated."  *Id.*

There is no way to align these regulations with Plaintiff's request to not work alone with

women, and no way that Trane could have accommodated Plaintiff's religious belief without

violating its obligations under the Executive Order.  It would have had to "make a[] distinction

based on sex" in job assignments, as it could not assign women to jobsites or work areas where

they might be alone with Plaintiff.  *Cf. id.* § 60-20.2(b).  Certain assignments (those paired with

Plaintiff) and employment activities (working one-on-one with Plaintiff) would only be available

---

December 15, 2025).  *See* Rich Winters Decl., ¶ 5.  Moreover, "Trane Technologies" is listed as a federal contractor in the list of federal contractors for Fiscal Year 2021 published by the OFCCP, and available at https://www.dol.gov/agencies/ofccp/foia/library/Employment-Information-Reports (last accessed December 15, 2025).  *Id.*, Ex. C (filtered).  Trane respectfully requests that the Court take judicial notice of Trane's status as a federal contractor and the applicability of the regulations to its operations.  41 C.F.R. §§ 60-1.3, 60-1.5.

[6] Executive Order 11246 was rescinded on January 21, 2025, more than two years after Plaintiff's employment was terminated.  *See* Executive Order 14173.

[7] The only exception was for roles where sex is a bona fide occupational qualification, which is inapplicable here. 41 C.F.R. § 60-20.3.

to men. *Cf. id.* § 60-20.2(b)(12).  Any two-person (or potentially two-person) work area to which

Plaintiff was assigned would, in effect, be segregated by sex. *Cf. id.* §§ 60-1.8, 60-20.2(b)(12).

As for Ms. Doe, she would not be treated "without regard" to her sex.  *Cf. id.* § 60-1.4(a)(1).

Quite the opposite.  Her sex would be a determinative factor in what assignments she received,

where she worked, and who she worked with.  She would be denied the opportunities afforded to

male technicians; namely, the ability to be assigned to any jobsite, to work one-on-one with all of

her colleagues, and to participate fully in networking, training, and mentoring with and among all

of her coworkers.  *Cf. id.* § 60-20.2(b)(11).  Her employment would not, and could not, be on equal

terms as the men she worked with.

Violating these regulations—which Trane would have had to do to accommodate

Plaintiff—would have put the Company at risk of administrative or judicial enforcement,

termination of its federal contracts, debarment from future contracts, and criminal prosecution.  41

C.F.R. §§ 60-1.1, 1.27-28 (setting forth sanctions for non-compliance). It is an unjustifiable

burden, which is why "Title VII cannot be used to require employers to depart from binding federal

regulations." *Bey*, 999 F.3d at 170.  Plaintiff cannot argue otherwise.

> 2.    <u>Accommodating Plaintiff would have exposed Trane to potential claims of
> discrimination under the NYSHRL</u>

Accommodating Plaintiff would have violated the NYSHRL, which prohibits employers

from discriminating on the basis of sex and/or subjecting employees to "inferior terms, conditions,

or privileges of employment" because of their sex.  N.Y. Exec. Law §§ 296(1)(a), (h).

The NYSHRL was amended in 2019 to require that Courts "construe the statute broadly in

favor of discrimination plaintiffs, to the extent such a construction is reasonably possible." *Syeed*

*v. Bloomberg L.P.*, 41 N.Y.3d 446, 451 (2024) (quotation and citations omitted). Since then, New

York courts have applied the New York City Human Rights Law's ("NYCHRL") "analytical

framework" to discrimination claims under the NYSHRL.  *McCabe v. 511 W. 232nd Owners Corp.*, 237 N.Y.S.3d 118, 137 (2024) (citations omitted) ("given the now applicable parallel language, the statutes must be interpreted in kind.").[8]  Under that framework, a plaintiff can bring a claim for discrimination if she was "treated less well than other employees on the basis of a protected characteristic."  *Golston-Green v. City of New York*, 184 A.D.3d 24, 38 (2d Dep't 2020); *see also Potter v. City of New York*, No. 155953/2022, 2024 N.Y. Misc. LEXIS 6990, at *9 (Sup. Ct., N.Y. Cty. Sept. 11, 2024).[9]  To avoid liability, an employer must show that discrimination played "no role" in the challenged conduct.  *Wright*, 237 A.D.3d at 1145 (quoting *Singh v. Covenant Aviation Sec., LLC*, 131 A.D.3d 1158, 1161 (2d Dep't 2015)).  The standard for bringing a claim is liberal, the requirements for defeating a claim are high.

Trane could not accommodate Plaintiff without unlawfully discriminating against Ms. Doe. Plaintiff claims that he could not be alone with Ms. Doe because he needed to protect himself against "false accusations" and the "appearance of evil."  Dkt. 1, ¶ 19.  To accommodate that belief and insulate Plaintiff from the false allegations he believed all women might raise, Trane would have to exclude Ms. Doe from certain jobsites and deny her any assignments where she might be alone with Plaintiff.  Stated another way, Trane would have to treat Ms. Doe less well than it treated her other male colleagues—none of whom would be subject to these restrictions—solely because of her sex.

---

[8] There continue to be distinctions between the statutes, including, for example, that the NYCHRL provides greater protection against disability-based discrimination than the NYSHRL.  *See Alvarez v. New York City Tr. Auth.*, 230 A.D.3d 541, 543 (2d Dep't 2024).  Those distinctions are inapplicable here.

[9] The Court in *Golston-Green* also analyzed the plaintiff's claims under the *pre*-amendment NYSHRL.  While it declined at the time to address whether the amendments affected the materially adverse standard applicable to post-amendment NYSHRL claims, it recognized later that "[a]s a result of the amendments, the NYSHRL now aligns with the standards of the New York City Human Rights Law."  *Wright v. White Plains Hosp. Med. Ctr.*, 237 A.D.3d 1143, 1145 (2d Dep't 2025)

This would violate the NYSHRL and, if Ms. Doe filed a claim, expose Trane to significant risk of legal liability. Plaintiff cannot argue otherwise. Similar or less egregious conduct has been found actionable under the framework that Courts are now applying to NYSHRL claims. *See, e.g., Albunio v. City of New York*, 16 N.Y.3d 472, 476 (2011) (changes to geographical assignments and hours of work that plaintiff "did not like," being excluded form meetings, and getting a less desirable job than expected all actionable employment actions under the NYCHRL); *Golston-Green*, 184 A.D.3d at 41 (actionable hostile work environment where supervisor stated that he did not "like women on the job because they have babies" actionable, as it "plainly expresses a view of the role of women in the workplace."); *Otero v. District Council 37, AFSCME, AFL-CIO*, No. 161421/2013, 2019 N.Y. Misc. LEXIS 4281, at *15 (Sup. Ct., N.Y. Cty. July 30, 2019) (plaintiff alleged that he was treated less well than his white coworkers where he alleged, *inter alia*, that he was "denied favorable work assignments" and "did not receive the same support when working on assignments"); *Kellman v. Metro Transp. Auth.*, 8 F.Supp.3d 351, 379 (S.D.N.Y. 2014) (denial of training was not "merely trivial" and thus actionable under the NYCHRL).

Trane would not be able to defend against such a claim, as its actions would be indisputably based on Ms. Doe's sex. That it was trying to accommodate Plaintiff and not acting out of sex-based animus is irrelevant. *Melman v. Montefiore Med. Ctr.*, 98 A.D.3d 107, 140 (1st Dep't 2012) (intentional discrimination requires intentional treatment, not animosity). The NYSHRL does not prioritize Plaintiff's request for an accommodation over Ms. Doe's statutory right to a workplace free from discrimination, and neither should this Court.

3. <u>Accommodating Plaintiff would have violated Title VII's prohibition on segregated workplaces and exposed Trane to claims of a hostile work environment</u>

Finally, accommodating Plaintiff would have violated Title VII itself.  It is unlawful under Title VII for an employer to "limit, segregate, or classify his employees … in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's … sex …"  42 U.S.C. § 2000e-2(a)(2).  Unlike Title VII's more-frequently litigated disparate treatment provision,[10] § 2000e-2(a)(2) does not require proof of an adverse action.  *EEOC v. Autozone, Inc.*, 860 F.3d 564, 569 (7th Cir. 2017).  It prohibits prospective harm—segregation that could *foreseeably* deprive an employee of job-related opportunities, even if no deprivation has occurred.[11]  This broader scope is not surprising, as "Congress, in enacting Title VII, found classifications based on sex inherently invidious."  *Evans v. Sheraton Park Hotel*, 503 F.2d 177, 186 (1974) (holding that the maintenance of sex-segregated unions was a *per se* violation of Title VII's parallel provision prohibiting segregation in labor unions).

Even giving his allegations the most favorable inference, Plaintiff requested that Trane segregate and classify its employees by sex.  Dkt. 1, ¶¶ 17-19.  Men could work alone with Plaintiff.  Women could not.  To meet this requirement, Trane would have had to segregate Ms. Doe from certain work assignments and jobsites because of her sex, necessarily depriving her of employment-related opportunities.  That she could be sent to other jobsites, and work with other technicians, would not make this sex-based segregation lawful.  Dkt. 1, ¶ 20.  While the Second Circuit has not addressed this precise issue, it has held that an employer violates § 2000e-2(a)(2)

---

[10] 42 U.S.C. § 2000e-2(a)(1).
[11] "Tend" being defined as "to move, direct, or develop one's course in a particular direction."  *See* Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/tend (last visited December 15, 2025).

by assigning an employee to a job because of their protected characteristic, even if there is no change to the employee's salary, benefits, and title. *Knight v. Nassau County Civil Service Com.*, 649 F.2d 157, 160 n.3, 162 (2d Cir. 1981). The plaintiff in *Knight* was assigned to a position "based on a racial stereotype that blacks work better with blacks and on the premise that [his] race was directly related to his ability to do the job," which the plaintiff considered both racist and demeaning. *Knight*, 649 F.2d at 162. This, the Court held, was an "impermissible classification based on race," in violation of Title VII. *Id*. at 159, 162. So too was Plaintiff's request.

Other courts have reached similar conclusions, finding that protected characteristic-based job assignments violate Title VII, even if there is no tangible effect on the employee's job responsibilities, job status, pay, or benefits. *See Ferrill v. Parker Group, Inc.*, 168 F.3d 468 (11th Cir. 1999) (telemarketer's practice of assigning "get-out-the-vote" calls by race was unlawful "intentional race discrimination in job assignments"); *Patterson v. UPMC South Hills Health Sys. Home Health, L.P.*, No. 03-89, 2005 U.S. Dist. LEXIS 47610, at *22-23 (W.D. Penn. May 15, 2005) (employer "unlawfully segregated [plaintiff's] assignments because of her race," even though the segregated assignments had no effect on her job responsibilities or status).[12]

This aligns with the U.S. Equal Employment Opportunity Commission's ("EEOC" or the "Commission") stated position and interpretation of Title VII, *i.e.*, that "[i]t is illegal for an employer to make decisions about job assignments … based on an employee's … sex … For example, an employer … may not segregate employees of a particular [protected class] from other employees or from customers." EEOC, PROHIBITED EMPLOYMENT POLICIES/PRACTICES, available at https://www.eeoc.gov/prohibited-employment-policiespractices (last accessed

---

[12] Both *Ferrill* and *Patterson* applied Title VII standards to claims under Section 1981. As the Court in *Ferrill* explained, "[t]he test for intentional discrimination in suits under § 1981 is the same as the formulation used in Title VII discriminatory treatment cases." *Ferrill*, 168 F.3d at 472 (quotation and citation omitted).

December 15, 2025).  The Commission has reiterated this view in official interpretive guidance documents, stating, *inter alia*, that "a *prima facie* case of discrimination would be established if the employer had a policy [or practice] of assigning … women to one production line and men to another."  EEOC, CM-618: SEGREGATING, LIMITING, AND CLASSIFYING EMPLOYEES (Oct. 1982), available at: https://www.eeoc.gov/laws/guidance/cm-618-segregating-limiting-and-classifying-employees.

The same analysis applied by these Courts and by the EEOC should apply here—only permitting men to work one-on-one with Plaintiff or at jobsites where Plaintiff might be alone would have necessarily required that Trane assign technicians based on their sex, thereby violating Title VII.

Regardless, it is unreasonable to argue that Trane could have accommodated Plaintiff without adversely affecting Ms. Doe's status as an employee.    Beyond the inherently harmful nature of a segregated workplace,[13] the EEOC has recognized the critical importance of informal workplace networks, and the adverse effects that exclusion from those networks can have on employees:

> Informal workplace networks can be just as important to an organization as official job titles and reporting relationships.  Thus, an employee's success may depend not only on his or her job duties, but also on his or her integration into important workplace networks. Employers cannot allow racial bias to affect an employee's ability to become part of these networks.

EEOC, SECTION 15 RACE AND COLOR DISCRIMINATION (Apr. 2006), available at https://www.eeoc.gov/laws/guidance/section-15-race-and-color-discrimination#VIIB4.    That its guidance is in the context of race and not sex is of no moment, as the same standards would apply.

---

[13] *See Firefighters Institute for Racial Equality v. City of Saint Louis*, 549 F.2d 506, 514-15 (8th Cir. 1977) (employer was liable under Title VII for White firefighters' exclusion of Blacks from their "supper clubs," as those clubs used employer-provided facilities and thus contributed to a discriminatory work environment).

Prohibiting Ms. Doe from working alone with Plaintiff would tend to deprive her of her ability to fully integrate with her coworkers, "adversely affect[ing her] status as an employee" because of her sex.

Moreover, granting Plaintiff's request could have created an actionable hostile work environment for Ms. Doe. Plaintiff is entitled to his religious belief. But an accommodation predicated on the belief that women in a professional setting cannot be trusted to be alone with a man without putting that man at risk of a false claim of sexual misconduct could be demeaning and offensive to a reasonable person in Ms. Doe's position. Accommodating that belief could have, at least arguably, permeated the workplace with sex-based hostility. *Cf. Chaney v. Plainfield Healthcare Ctr.*, 612 F.3d 908, 915 (7th Cir. 2010) (nursing home's "willingness to accede to a patient's racial preferences" was the "principle source of the racial hostility in the workplace"). This is not a risk Trane was required to take. *See Matthews*, 417 Fed. Appx. At 554 (accommodation not required where it exposes employer to claims of permitting workplace harassment); *Brown v. Alaska Airlines, Inc.*, No. 22-CV-668, 2024 U.S. Dist. LEXIS 92026 (W.D. Wash. May 22, 2024) (rejecting argument that an accommodation is only an undue hardship if the "religiously motivated discriminatory behavior rises to an actionable level," as employers "must be allowed to determine when and how to apply [their] antiharassment and antidiscrimination policies").

Ultimately, Trane "need not accommodate an employee's religious beliefs if doing so would result in discrimination against his coworkers or deprive them of contractual or other statutory rights." *Peterson v. Helwett-Packard Co.*, 358 F.3d 599, 607 (9th Cir. 2004). It is evident from the Complaint that Trane could not accommodate Plaintiff's belief without discriminating against others and violating federal regulations, the NYSHRL, and Title VII. An accommodation

that compels such a result is an undue hardship as a matter of law.  Plaintiff's claim for discrimination must be dismissed.

## II.    PLAINTIFF'S NYSHRL RELIGIOUS DISCRIMINATION CLAIM MUST BE DISMISSED FOR THE SAME REASONS AS HIS TITLE VII CLAIM

Courts generally apply Title VII standards to religious accommodation claims under the NYSHRL, subject to the statute's requirements that it be broadly construed.  *See, e.g., Salamoon v. Richmond Univ. Med. Ctr.*, No. 151073/2023, 2024 N.Y. Misc. LEXIS 6190, *24 (Sup. Ct., Richmond Cty.  Apr. 11, 2024).  Plaintiff's failure to accommodate claim under the NYSHRL fails for the same reason as his claim under Title VII—accommodating Plaintiff would have created an undue hardship.

The NYSHRL defines "undue hardship" as a "significant expense or difficulty (including a significant interference with the safe or efficient operation of the workplace or a violation of a bona fide seniority system)."  N.Y. Exec. Law § 296(10)(d).  An accommodation that requires an employer to violate the law creates a "significant expense or difficulty."  *See Walrond v. New York City Health & Hosps. Corp.*, 240 A.D.3d 933, 935-36 (2d Dep't 2025) ("defendant conclusively established that providing the plaintiff with an accommodation … would impose an undue hardship on the defendant because it would require the defendant to violate New York State's mandate for hospital employees …").

As set forth above, accommodating Plaintiff would require that Trane violate federal regulations and federal and state law, thereby imposing an undue hardship under the NYSHRL.  *Salamoon,* 2024 N.Y. Misc. LEXIS 6190, at *24 (relying on federal case law to dismiss failure to accommodate claim under NYSHRL because granting religious accommodation would require the violation of a binding state regulation, causing defendant to suffer an undue hardship as a matter of law); *Banasik v. Mount Sinai Health Sys.*, No. 153072/2023, 2025 N.Y. Misc. LEXIS 2236, *9

(Sup. Ct., N.Y. Cty. Apr. 11, 2025) (same); *Hughes-Greene v. Westchester Med. Ctr.*, No. 63095/2023, 2024 N.Y. Misc. LEXIS 2176, *6 (Sup. Ct., Westchester Cty. May 10, 2024) (holding that where employee's request would require her employer to violate a state regulation, the proposed accommodation constituted an undue hardship as a matter of law).

## III.   PLAINTIFF'S RETALIATION CLAIMS FAIL AS A MATTER OF LAW AND MUST BE DISMISSED

Plaintiff claims that he was retaliated against "for exercising his right … to seek reasonable accommodation," in violation of the NYSHRL and Title VII.  Dkt. 1, ¶¶ 57, 65.   As set forth below, he has not pled an actionable retaliation claim under either statute, and his claims must be dismissed.

### A.   Requesting an accommodation is not protected activity under the NYSHRL, and thus cannot support a claim of retaliation

It is well-settled that requests for accommodation are not protected activity under the NYSHRL, and that making such a request cannot be the basis of a retaliation claim.  *See Taulbee v. D'Youville College*, No. 21-CV-228, 2022 U.S. Dist. LEXIS 25037, at *5 (W.D.N.Y. Jan. 11, 2022) (collecting cases); *Banasik*, 2025 N.Y. Misc. LEXIS 2236, at *8 ("Plaintiff's claim that defendant retaliated against him in response to his requests for religious exemption and medical accommodation is unavailing, as such requests are not a protected activity for purposes of a retaliation claim") (citations omitted).  His NYSHRL claim must be dismissed.

### B.   Plaintiff has not alleged protected activity for purposes of his retaliation claim under Title VII, and even if he did, the claim is wholly duplicative of his failure to accommodate claim and must be dismissed

Plaintiff's claim for retaliation under Title VII fares no better.  To survive a motion to dismiss, Plaintiff must plausibly allege that (1) he opposed an unlawful employment practice; and

that (2) Trane took adverse action against him because of that opposition.  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015).  Plaintiff fails on both prongs.

1.    <u>Plaintiff does not allege that he opposed unlawful conduct</u>

The Second Circuit has not yet addressed whether requesting a religious accommodation is "opposing an unlawful employment practice" for purposes of a Title VII retaliation claim.  The Eighth Circuit has held that "merely requesting a religious accommodation" is not protected, as it is not "oppositional" activity.  Nothing is being opposed.  *EEOC v. N. Men. Health Care*, 908 F.3d 1098, 1102 (8th Cir. 2018).  The Sixth Circuit followed suit in a non-precedential decision, as have numerous district courts.  *See Stanley v. ExpressJet Airlines, Inc.*, 808 Fed. Appx. 351, 358 (6th Cir. 2020) ("A request for accommodation does not constitute protected activity under Title VII, which clearly delineates two options: opposition to discriminatory practice or participation in an investigation"); *Bushra v. Main Line Health*, 709 F.Supp.3d 164, 172-73 (E.D. Pa. 2023) (citations omitted).

This Court should hold similarly here.  Plaintiff did not "oppose" any conduct that he believed was in violation of Title VII.  He requested an accommodation.  That is not enough to support a retaliation claim.  *Bushra*, 709 F.Supp.3d at 173 (plaintiff "cannot prevail on his retaliation claim merely because he applied for a religious accommodation.").  Holding otherwise would ignore Title VII's statutory text and the plain meaning of the word "oppose."

2.    <u>The only alleged adverse action is the denial of his religious<br>accommodation, which is insufficient as a matter of law</u>

Even assuming Plaintiff's request for an accommodation was protected activity, he has not plausibly alleged that Trane subjected him to an adverse action because of that request.  Plaintiff claims that after he "sought a reasonable accommodation" for his religious belief, he was subjected to a "hostile work environment, including interrogation and harassment, forced abrupt

19

administrative leave, and termination of his employment." Dkt. 1, ¶ 57.  He is effectively alleging that Trane retaliated against him for requesting an accommodation by denying his accommodation request.  But that is not an actionable claim. "[A]n employer's mere failure to make an accommodation subsequent to an employee's request simply gives rise to a failure to accommodate claim and cannot be bootstrapped into a viable retaliation claim." *Addonizio v. Nuvance Health*, No. 23-CV-1582, 2024 U.S. Dist. LEXIS 103874, at *20 (S.D.N.Y. June 11, 2024) (internal quotation and citations omitted); *Robles v. Medisys Health Network, Inc*., No. 19-CV-6651, 2020 U.S. Dist. LEXIS 109115 (E.D.N.Y. June 19, 2020) (an employer's mere failure to make an accommodation subsequent to an employee's request simply gives rise to a failure to accommodate claim and cannot be bootstrapped into a viable retaliation claim); *Montague v. Nat'l Grid USA*, No. 17-CV-0003S, 2020 U.S. Dist. LEXIS 217798, at *51 (W.D.N.Y. Nov. 20, 2020) ("The failure to accommodate cannot be bootstrapped into a retaliation claim").  Because that is the only basis of Plaintiff's retaliation claim, it must be dismissed.

## <u>CONCLUSION</u>

For the above reasons, Trane respectfully requests that the Court enter an order dismissing Plaintiff's Complaint with prejudice and without leave to amend.

Respectfully submitted,

*ATTORNEYS FOR DEFENDANT*

By:  *s/ Kristi Rich Winters*
Kristi Rich Winters
Benjamin Wilkinson
Jackson Lewis P.C.
677 Broadway, 9th Floor
Albany, New York 12207
P: (518) 512-8700
F: (518) 242-7730
kristi.winters@jacksonlewis.com
Benjamin.wilkinson@jacksonlewis.com

Dated: December 15, 2025
      Albany, New York